U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

APR 15 2016

TONY R. MOORE  CLERK
BY _____
            DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL ACTION NO. 1:13-cr-00254 |
| VERSUS | CHIEF JUDGE DRELL |
| ARTHUR NDUBUISI ASHBUOGWU<br>Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM RULING OF CONDITIONAL RELEASE

Defendant, Arthur Ndubuisi Ashbuogwu ("Ashbuogwu"), seeks release from his mandatory hospitalization pursuant to 18 U.S.C. § 4243(a). For the following reasons, and as explained more fully below, the Court finds that Ashbuogwu should be discharged under a prescribed regimen of medical, psychiatric, and/or psychological care.

I.  Background

On September 3, 2013, Ashbuogwu was charged by Complaint with one count of threatening the President of the United States under 18 U.S.C. § 871. (Doc. 1). The next day, during Ashbuogwu's initial appearance, Magistrate Judge James D. Kirk ordered that the Bureau of Prisons conduct a psychological evaluation of Ashbuogwu, and that further proceedings be held in abeyance pending the results of that evaluation. (Docs. 4, 5).

The Court received Ashbuogwu's first psychiatric evaluation on December 30, 2013. The evaluating psychologist concluded that Ashbuogwu had an extensive history of behavior exhibiting psychotic symptoms. The psychologist also concluded

that, at the time of the evaluation, Ashbuogwu appeared to suffer from paranoid schizophrenia. Nonetheless, the psychologist concluded that Ashbuogwu was competent to stand trial and assist in his defense – at least to the extent that he complied with a prescribed medication regimen.

On February 5, 2014, Magistrate Judge Kirk conducted a competency hearing. Ashbuogwu appeared and was represented by appointed counsel. (Doc. 21). Based upon Ashbuogwu's first psychiatric evaluation – and both parties' agreement to the findings therein – Magistrate Judge Kirk found Ashbuogwu competent to stand trial, and accepted Ashbuogwu's pleas of not guilty and not guilty by reason of insanity to the pending charge. (Docs. 21, 24). Ashbuogwu waived his detention hearing and was therefore detained pending further proceedings. (Doc. 22).

On March 6, 2014, under 18 U.S.C § 4243 and Fed. R. Crim. P. 12.2(c), the United States of America (the "government") moved to conduct a pre-trial mental health examination of Ashbuogwu to determine his potential dangerousness to the community. The Court granted the government's motion, and received a second psychiatric evaluation on August 13, 2014, more than five months later. (Docs. 31, 33). In this second report, a three-member panel of evaluating psychologists concluded that Ashbuogwu met the diagnostic criteria for paranoid schizophrenia, and that Ashbuogwu presented a danger to persons and property in the community. The panel recommended civil commitment under § 4243, pending Ashbuogwu's continued compliance with mental health treatment, ongoing mental health treatment, resolution of financial disputes regarding Ashbuogwu's military benefits,

and application for disability benefits. The panel recommended conditional release pending satisfaction of those conditions and the establishment of a firm release plan.

On August 22, 2014, Ashbuogwu moved for an evidentiary hearing. (Doc. 34). Magistrate Judge Kirk denied that motion as premature based upon the second psychiatric evaluation. (Doc. 36). Three months later, on November 25, 2014, Chief Judge Dee D. Drell conducted an evidentiary hearing. (Doc. 42). Chief Judge Drell found Ashbuogwu not guilty only by reason of insanity, and ordered that Ashbuogwu be committed to the custody of the United States Attorney General for hospitalization under § 4243. (Docs. 42, 44). Ashbuogwu was transferred to the United States Medical Center for Federal Prisoners in Springfield, Missouri (the "Medical Center"). Ashbuogwu remained at the Medical Center for approximately 15 months.

On January 8, 2016, Ashbuogwu moved for a second evidentiary hearing. (Doc. 46). Chief Judge Drell granted his motion, and instructed the Director of the Medical Center to file a report compliant with 18 U.S.C. § 4247(e). (Doc. 47). Chief Judge Drell further ordered that the undersigned conduct an evidentiary hearing to determine if Ashbuogwu's continued hospitalization is necessary.

On February 17, 2016, the Court received a Forensic Psychological Report (Doc. 49) (the "Report") researched by a three-person panel of psychologists and social workers at the Medical Center, and prepared by Dr. Chad Brinkley. The Court initially scheduled an evidentiary hearing for March 15, 2016, and later moved that hearing to be conducted on April 15, 2016. (Doc. 55) (the "Hearing"). The Court conducted the Hearing and heard arguments from counsel and testimony from two

witnesses, Ashbuogwu and Dr. Randy Brandt, Ashbuogwu's treating psychologist at the Medical Center. The Court also reviewed four exhibits introduced by Ashbuogwu, including the Report. No additional evidence was offered or, the Court presumes, available.

## II. Law and Analysis

### A. Burden and standard of proof.

The Hearing, and the Court's analysis, is governed by 18 U.S.C. § 4243(f):

> When the director of the facility in which an acquitted person is hospitalized pursuant to subsection (e) determines that the person has recovered from his mental disease or defect to such an extent that . . . his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment, would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. . . . The court shall . . . hold a hearing, conducted pursuant to the provisions of section 4247(d), to determine whether he should be released. If, after the hearing, the court finds by the standard specified in subsection (d) that the person has recovered from his mental disease or defect to such an extent that—
>
> (1) his release would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall order that he be immediately discharged; or
>
> (2) his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would no longer create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall—
>
>> (A) order that he be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for him, that has been certified to the court as appropriate by the director of the facility in which he is committed, and that has been found by the court to be appropriate; and

> **(B)** order, as an explicit condition of release, that he comply with the prescribed regimen of medical, psychiatric, or psychological care or treatment.
>
> The court at any time may, after a hearing employing the same criteria, modify or eliminate the regimen of medical, psychiatric, or psychological care or treatment.

It is clear that the defendant bears the burden of proving he presents no substantial risk to persons or property. See id. § 4243(d).

It is less clear, however, what standard of proof should apply. If the underlying offense involves "bodily injury to, or serious damage to the property of, another person, or . . . a substantial risk of such injury or damage," the defendant must satisfy a clear and convincing evidence standard. See id. As to "any other offense," however, the standard of proof is a preponderance of the evidence. See id.

In this case, the underlying offense – threats to the President – presents a challenge in determining the appropriate standard of proof under § 4243(d). In United States v. Gilgert, the United States Court of Appeals for the Tenth Circuit issued the foremost decision on this issue. 314 F.3d 506 (10th Cir. 2002). The court explained that "[c]ertain crimes" – such as armed robbery – "rather clearly do or do not satisfy the 'injury' / 'damage' / 'substantial risk' standard." Id. at 514. But "threats do not map easily onto the taxonomy of crimes created by § 4243." Id. at 514.

However, the Gilgert court determined that a threat against the President is "'qualitatively different from a threat against a private citizen or other public official' because the specter of '[a][p]resident's death in office has worldwide repercussions and affects the security and future of the entire nation.'" Id. at 515 (quoting United

States v. Twine, 853 F.2d 676, 681 (9th Cir. 1988)). Therefore, the court held that "the crime of making a threat against the President . . . necessarily involves a substantial risk of bodily injury to another person or damage to another person's property." Gilgert, 314 F.3d at 515. As a result, according to Gilgert, courts must apply the clear and convincing evidence standard at a defendant's § 4243(e) hearing where the underlying offense is a violation of § 871.

The Fifth Circuit has not squarely addressed this issue. However, in United States v. Gutierrez, the Fifth Circuit cited Gilgert with apparent approval. 704 F.3d 442, 453 (5th Cir. 2013). The court affirmed the district court's order to approve involuntary medication for a defendant accused of threatening the President under § 871. Id. In doing so, the court – citing Gilgert – noted that the defendant would likely have to disprove substantial risk by clear and convincing evidence to avoid mandatory hospitalization under § 4243. See id. Only one district court in our circuit has addressed the issue – twice – and has also chosen to apply Gilgert. See United States v. Duncan, A-99-CR-215 JRN, 2012 WL 1566177, at *2 (W.D. Tex. May 2, 2012); United States v. Marsh, A-99CR-006 JRN, 2007 WL 1577661, at *2 (W.D. Tex. May 31, 2007).

At least one district court in another circuit, however, has disagreed. In United States v. Smegal, the United States District Court for the District of Massachusetts considered the proper standard of proof as to a defendant charged with ten counts of mailing threatening letters under 18 U.S.C. § 844. See CR 08-10070-MLW, 2010 WL 4922694, at *1 (D. Mass. Nov. 29, 2010). The court stated: "[I]t is not evident to the

court that the Tenth Circuit was correct in holding that the choice between evidentiary standards should be determined based on the general nature of the crime rather than the facts concerning the defendant's conduct." Id. at *6. Therefore, the court held that "[b]ecause the crime of mailing threats can be, and often is, committed without presenting a substantial risk of bodily injury to another person or of serious damage to property, and because no such risk was actually presented by [defendant's] threats, the court finds the preponderance of the evidence standard to be applicable in this case." Id.

The Court does not read Gutierrez to be an express, binding adoption of the Gilgert reasoning. But it is nearly so. And like the Western District of Texas, this Court agrees with the reasoning in Gilgert. The Court may struggle with a categorical statement that all threats of any kind involve a substantial risk of injury to persons or property. However, a threat against the President is simply different. Beyond an individual, a threat against the President implicates our nation's highest office, those bound to protect it, and those bound or compelled to respond to such a threat, including law enforcement officers and others. The fact that § 871 exists as a unique offense, separate from offenses of a similar character in Chapter 41 of Title 18, evidences the distinctiveness of the offense.

At the Hearing, neither attorney offered additional or contradictory authority. The Court has uncovered none. Accordingly, the Court applies Gilgert and Gutierrez. Ashbuogwu must establish that he does not pose a substantial risk of injury to persons or property by clear and convincing evidence.

### B. Ashbuogwu has established, by clear and convincing evidence, that his conditional release would no longer create a substantial risk of injury to persons or property.

Ashbuogwu offered four exhibits at the Hearing: (1) the Report dated February 3, 2016 (Docs. 49, 57-1); (2) a Certificate of Conditional Release signed by the Warden of the Medical Center; (3) the curriculum vitae of Dr. Brandt; and (4) a list of his current medications. Ashbuogwu also offered testimony from two witnesses at the Hearing: himself and Dr. Brandt. Because the government concurs with Dr. Brandt's recommendations, the government did not offer countervailing evidence. The evidence indicates the following.

Ashbuogwu suffers from schizophrenia. Although Ashbuogwu's symptoms appeared well into his adulthood, and he has apparently experienced long asymptomatic periods, Ashbuogwu will most likely suffer from, and require treatment for, his mental illness for the rest of his life.

Ashbuogwu's stability is most directly related to two factors: (1) medical and psychiatric treatment, particularly medication; and (2) residential and social stability. Stated otherwise, when Ashbuogwu is not taking prescribed medication and is not living in an environment of relative stability, Ashbuogwu is far more likely to exhibit symptoms of schizophrenia. Conversely, the Report and the testimony establish that Ashbuogwu presents a very low risk of injury to persons or property when he is taking psychiatric medication, receiving ongoing psychiatric treatment, and living in a stable environment. Ashbuogwu was apparently a model resident at the Medical Center and an active participant in his treatment plan.

It also bears mentioning that Ashbuogwu has no history of substance abuse, violent crime, or intellectual disability. In fact, Ashbuogwu obtained a college degree in Nigeria, served in the United States Army, and appears to be a calm, reasonable, and intelligent person while taking his prescribed medication.

Further, Ashbuogwu has developed a firm understanding of his mental illness, and the need to treat his illness with medication and therapy. In so doing, Ashbuogwu realizes his prior erratic behavior – including the behavior giving rise to the offense underlying this case – is directly related to his mental illness. Ashbuogwu agrees that he must take medication and maintain a stable living environment.

However, Ashbuogwu has no contact with his ex-wife or other family members in the United States or his native country, Nigeria. The Court is concerned that, if socially isolated or unstable, Ashbuogwu may encounter difficulty in continuing any release plan. As such, and as a veteran, Ashbuogwu must look to facilities operated by the U.S. Department of Veterans Affairs ("VA") for medical and social support.

Through notably good work, the attorneys, United States Probation Officers, and other officials involved in this case have developed a firm release plan for Ashbuogwu. The plan includes housing, supervision, and psychiatric treatment arranged through the VA. Ashbuogwu expressed a clear desire to comply with the release plan in all respects. The Court may monitor Ashbuogwu's progress in periodic hearings conducted pursuant to 18 U.S.C. § 4243. And the Court may augment Ashbuogwu's supervision, treatment requirements, and life conditions as necessary. Therefore, Ashbuogwu is an appropriate candidate for conditional release.

### III. Conclusion

Ashbuogwu has established, by clear and convincing evidence, that if conditionally released, he will not pose a substantial risk of harm to persons or property. Therefore, under 18 U.S.C. § 4243(f)(2), the Court orders that Ashbuogwu be immediately released pursuant to the conditions set forth in the accompanying Order of Conditional Release.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 15th day of April, 2016.

Joseph H.L. Perez-Montes
United States Magistrate Judge